OPINION OF THE COURT
Bellacosa, J.
Two police officers responded to a 911 emergency call from a mother that her adult son, respondent Stone, had beat her and was threatening to kill her. Shortly after they entered the apartment, Stone injured both officers with a baseball bat and was thereafter charged with assault, second degree. The People consented to defendant’s plea of not guilty by reason of mental disease or defect, in Supreme Court, Criminal Term, New York County. This allowed him to be acquitted on that special plea authorization (CPL 220.15) and triggered the postadjudication Criminal Procedure Law provisions governing that resolution of criminal charges.
After a mandatory psychiatric examination (CPL 330.20 [2]) and an initial hearing (CPL 330.20 [6]), Supreme Court con- *299 eluded that under the statutory definitions (CPL 330.20 [1] [c], [d]) Stone was not then suffering from a dangerous mental disorder or mental illness. The court discharged him but only subject to an authorized order of conditions (CPL 330.20 [7]). One condition was his continued voluntary participation in a specific psychiatric treatment program. Five months later, as Stone’s condition was deteriorating, he eloped from his voluntary program. He became acutely suicidal and, upon seeking admission to a different psychiatric facility, assaulted a physician.
The District Attorney, with the consent of Stone’s criminal defense attorney and the New York State Office of Mental Health, then applied for a recommitment order alleging Stone had violated his order of conditions and that he suffered from a dangerous mental disorder (CPL 330.20 [14]). Following the CPL 330.20 evidentiary hearing, the Supreme Court found upon extensive medical proof of paranoid schizophrenia and command hallucinations that Stone suffered from a dangerous mental disorder and was a danger to himself or others (CPL 330.20 [1] [c]). The court ordered his placement in a secure psychiatric facility for six months.
A three-Justice majority of the Appellate Division reversed this order, concluding principally that resort to the recommitment provisions of CPL 330.20 (14) following an initial hearing conditional discharge is neither logically consistent nor statutorily authorized; that Stone’s commitment should be effected in accord with the provisions of only the Mental Hygiene Law (though "orders of conditions” are alien to the Mental Hygiene Law); and that the District Attorney lacked authority to seek recommitment absent a prior secure facility psychiatric placement. Two Justices dissented and reasoned that the plain wording of the pertinent statute and subdivision, as also unequivocally substantiated by its legislative history, authorized a recommitment proceeding during the period covered by an order of conditions.
The People argue that regardless of a criminal acquittee’s postadjudication commitment status, the District Attorney may initiate a recommitment proceeding during the pendency of an order of conditions. Stone counters that a "recommitment order” must be premised on an earlier "commitment order” and that all postadjudication proceedings regarding acquittees who were initially found not tó suffer from a dangerous mental disorder are governed only by the Mental Hygiene Law and not at all by the Criminal Procedure Law.
*300 We hold that a defendant absolved as not responsible for an otherwise criminal act by reason of mental disease or defect, who after an initial mandatory hearing is found not to be suffering from either a dangerous mental disorder or a mental illness, may while subject to an order of conditions under the initial disposition nevertheless be recommitted to a secure psychiatric facility pursuant to CPL 330.20 (14). Thus, we reverse and answer the certified question in the negative, deciding the case on statutory construction grounds only.
The postadjudication statutory scheme set forth in CPL 330.20 provides three alternative tracks, with different treatment progressions and procedural consequences, based upon the hearing court’s postacquittal determination of a criminal acquittee’s mental condition (CPL 330.20 [6], [7]; Approval Mem of Governor Carey, L 1980, ch 548, 1980 McKinney’s Session Laws of NY, at 1880; 1981 Report of NY Law Rev Commn [1981 NY Legis Doc No. 65], The Defense of Insanity in New York State, 1981 McKinney’s Session Laws of NY, at 2251, 2265). The applicable tracks are premised upon findings either "(i) that the defendant has a 'dangerous mental disorder’; or (ii) that the defendant does not have a dangerous mental disorder but is 'mentally ill’; or (iii) that the defendant does not have a dangerous mental disorder and is not mentally ill” (1981 Report of NY Law Rev Commn, op. cit, at 2265-2266; see, CPL 330.20 [1] [c], [d]; [6], [7]).
If the hearing court finds the acquittee has a dangerous mental disorder, it must issue a "commitment order” placing the person in a secure psychiatric facility for six months (CPL 330.20 [1] [f]; [6]). If the acquittee does not have a dangerous mental disorder but is mentally ill, the court must issue an order of conditions and an order committing the acquittee to the care of the Commissioner of Mental Health (CPL 330.20 [7]). Finally, if the court concludes that the acquittee does not suffer from either a dangerous mental disorder or a mental illness, then it must discharge the acquittee either unconditionally or subject to an order of conditions (CPL 330.20 [7]). An order of conditions imposed on track two acquittees and available also as to track three acquittees is a device enabling courts to maintain a supervisory role over particular discharged criminal acquittees by "directing a defendant to comply with this prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without *301 authorization” (CPL 330.20 [1] [o] [emphasis added]; see, Stokman and Heiber, The Insanity Defense Reform Act in New York State 1980-1983, 7 Intl J of L & Psy 367, 368).
CPL 330.20 (14) provides that "[a]t any time during the period covered by an order of conditions an application may be made by the commissioner or the district attorney * * * for a recommitment order when the applicant is of the view that the defendant has a dangerous mental disorder. * * * If the court finds [after a hearing] that the defendant has a dangerous mental disorder, it must issue a recommitment order” (emphasis supplied). Notably, the phrases "commitment order” and "recommitment order” are used only in connection with persons found to suffer from a dangerous mental disorder (see, e.g., CPL 330.20 [6], [8], [14]). Also, the statute importantly defines them singularly as: a " '[commitment order’ or 're-commitment order’ means an order committing a defendant to the custody of the commissioner for confinement in a secure facility for care and treatment for six months” (CPL 330.20 [1] KD.
A recommitment order is therefore expressly premised on an "order of conditions” and on a current dangerous mental disorder, not on a prior commitment. Nowhere does the statute predicate it on a prior commitment. Indeed, persons who are found after an initial hearing to be then suffering from a dangerous mental disorder are the only criminal acquittees subject to an initial "commitment order”. The secure psychiatric placement of such dangerously ill persons and the guarantee of continued judicial oversight pursuant to CPL 330.20 obviate the need in that treatment track for an order of conditions (Stokman and Heiber, The Insanity Defense Reform Act in New York State 1980-1983, 7 Intl J of L & Psy 367, 368; compare, CPL 330.20 [1] [f\; [6]; with CPL 330.20 [7]). Thus, the order of conditions predicate for a recommitment order would be drained of its meaning and purpose if the respondent’s theory were upheld.
Further, criminal acquittees discharged after an initial hearing (CPL 330.20 [7]), or transferred from a secure to a nonsecure facility (CPL 330.20 [11]), or released subsequent to a prior secure placement (CPL 330.20 [12]), or committed directly to the custody of the Commissioner of Mental Health (CPL 330.20 [7]) may all be subject to orders of conditions, yet under the respondent’s reasoning would end up outside the procedural framework and intended protection of the Criminal *302 Procedure Law. The plain purpose of a recommitment order within that statutory scheme is to keep a criminal acquittee previously found through one of these devices not to suffer from a dangerous mental disorder and, thus, not thereby subject to the CPL procedural devices, within the CPL’s continued oversight, due to the potentiality of a dangerous mental disorder. Insofar as the only prerequisites to a recommitment order are an outstanding order of conditions and the procedural safeguard of a judicial finding, after hearing, of a then current dangerous mental disorder, the effect of the plain meaning of the statutory language is that a recommitment order is not literally or logically dependent upon a prior "commitment order” (see, Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208).
Even if the statutory scheme were arguably deemed facially ambiguous, consideration of the legislative history of the Insanity Defense Reform Act of 1980 confirms the interpretation and application of the statute we give in this case (see, Doctors Council v New York City Employees’ Retirement Sys., supra, at 675). The Law Revision Commission explained three times in discussion as to each treatment track that, under CPL 330.20 (14), '[a]t any time during the effective period of an order of conditions * * * the district attorney or the Commissioner may apply to the court for a recommitment order if he believes that the defendant has a dangerous mental disorder. If, after a hearing on the application, the court finds that the defendant has a dangerous mental disorder, it must issue a recommitment order directing the defendant to be committed to a secure facility in [the Department of Mental Hygiene] for six months. If a recommitment order is issued, subsequent proceedings regarding retention or release of the defendant shall be governed by the provisions of proposed CPL 330.20” (1981 Report of NY Law Rev Commn, The Defense of Insanity in New York State, 1981 McKinney’s Session Laws of NY, at 2251, 2267-2268, [emphasis added]). The Law Revision Commission appended a flow chart to its report, tracing the stages within each track and demonstrating its expert understanding and narrative explanation as to precisely what it was recommending to the Legislature for enactment with respect to each of the three tracks. This also confirmed the applicability of the recommitment procedures to persons discharged subject to an order of conditions (1981 Report of NY Law Rev Commn, op. *303 cit., at 2276-2277). The Governor’s Approval Message to the Insanity Defense Reform Act added that "[a]t any time during the effective period of an order of conditions, which is valid for five years and may be extended for another five years, the District Attorney or the Commissioner of the Department of Mental Health can request the defendant’s recommitment to a secure facility” (Approval Mem of Governor Carey, L 1980, ch 548, 1980 McKinney’s Session Laws of NY, at 1879, 1880).
These important and express manifestations - of confirmatory legislative history, evincing intent and expertise as to the independent (that is free-standing from a prior commitment order) recommitment provision, should be given consideration and weight in order to appreciate the comprehensive, coherent statutory language and scheme and the practical interrelationship of commitment orders, recommitment orders, and orders of conditions (see, Uniformed Firefighters Assn. v Beekman, 52 NY2d 463, 471; Matter of Erie County Agric. Socy. v Cluchey, 40 NY2d 194, 200).
The legislative objectives of ensuring the safety of the public, safeguarding the rights of defendants found not responsible, and providing for the treatment of acquittees suffering from a current mental illness are secured by recommitment provisions designed to ensure that all persons who develop or relapse into a dangerous mental disorder during the pendency of the order of conditions are amenable to a secure psychiatric placement (see, 1981 Report of NY Law Rev Commn, The Defense of Insanity in New York State, 1981 McKinney’s Session Laws of NY, at 2251; Approval Mem of Governor Carey, L 1980, ch 548, 1980 McKinney’s Session Laws of NY, at 1879, 1880).
The remaining arguments lack merit and the constitutional ones are not preserved because they were not raised at the trial level.
Accordingly, the order of the Appellate Division should be reversed, without costs, the order of Supreme Court, New York County, reinstated insofar as it determined that CPL 330.20 (14) governed and the certified question answered in the negative.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.