■ In the Matter of ALBERT F., Appellant.—In a proceeding for a subsequent· retention order pursuant to CPL 330.20, Albert F. appeals, as limited by his brief, from so much of (1) an order of the County Court, Suffolk County (Tisch, J.), dated July 17, 1990, as imposed conditions on his subsequent retention, and (2) a resettled order of the same court, dated October 23, 1990, which also imposed conditions on his subsequent retention.

Ordered that the appeal from the order is dismissed, without costs or disbursements, since that order was superseded by the resettled order; and it is further,

Ordered that the resettled order is reversed insofar as appealed from, on the law, without costs or disbursements, the provision imposing conditions on Albert F.'s subsequent commitment is deleted, and the provision of the order dated July 17, 1990, imposing conditions on his subsequent retention is vacated.

In 1980, Albert F. was found not guilty by reason of mental disease of the intentional murder of a high school student. He was found to have a "dangerous mental disorder" within the meaning of CPL 330.20 (1) (c), and was committed to the custody of the New York State Commissioner of Mental Health, to be confined within a "secure facility" as defined by CPL 330.20 (1) (b). Subsequently, in January 1985 and pursuant to a transfer order (see, CPL 330.20 [11]) issued by the County Court, Orange County, Albert F. was transferred to the Kings Park Psychiatric Center, Suffolk County (a nonsecure facility), upon a finding that he no longer suffered from a "dangerous mental disorder".

During his hospitalization at the Kings Park facility, Albert F. was granted and used unescorted administrative privilege passes for a period of four years. With these passes he was essentially allowed to roam the grounds of the facility without supervision (see, 14 NYCRR 541.5 [b]). However, in the latter part of 1989 certain allegations were made that Albert F. had violated these passes by leaving the facility without permission. Accordingly, the Kings Park Psychiatric Center conducted an investigation into the allegations, and pending the investigation, Albert F.'s privileges were suspended. At the conclusion of the investigation, the facility was unable to reach a conclusion as to the truth of the allegations. It was subsequently recommended that his privileges be returned with certain time and monitoring conditions.

By this time, Albert F. was being committed under his fifth subsequent retention order. This fifth retention order was scheduled to expire on May 2, 1990. Therefore, in March 1990 the New York State Commissioner of Mental Health applied to the County Court, Suffolk County, for a subsequent retention order pursuant to CPL 330.20 (9). Although two district attorneys' offices had moved to intervene in the proceeding to conduct an investigation into the allegations against Albert F., there was no opposition to the application itself. Additionally, the application made no mention of any conditions to be imposed on his further commitment.

In granting the application and issuing a subsequent retention order, the County Court, Suffolk County, imposed a condition that Albert F. be prohibited from leaving the buildings to which he was restricted without the constant supervision of one or more employees of the Kings Park facility, based in part on the allegations that he had left the facility's grounds.

While other subdivisions of CPL 330.20 allow the court to issue an order on conditions during various phases of a person's commitment (see, CPL 330.20 [7], [10], [11], [12]), we find no statutory authority for the imposition of conditions when a person is retained pursuant to CPL 330.20 (9). Conditions of treatment may only be imposed pursuant to an "order of conditions" (CPL 330.20 [1] [o]), and such an order may only be extended "for good cause shown" (CPL 330.20 [1] [o]). Here the County Court did not issue an "order of conditions" (CPL 330.20 [1] [o]) nor was there a showing of good cause.

Moreover, separate regulations passed pursuant to CPL 330.20 govern when, how, and under what circumstances a person may be granted administrative privileges, which include allowing the person to leave the buildings to which he or she is restricted without supervision (see, 14 NYCRR 541.1 [a]; 541.5, 541.9). For a court to unilaterally impose such conditions undermines these regulations, the purpose of which is to entrust care and treatment to mental health professionals, not the courts.

In light of our determination, we need not address Albert F.'s due process argument. Thompson, J. P., Brown and Eiber, JJ., concur.

Harwood, J., concurs in the result, with the following memorandum: Among the purposes of CPL 330.20, including orders of conditions, are to permit courts to maintain a supervisory role over those persons absolved of responsibility for their

criminal acts on account of mental disease or defect who are no longer suffering from a dangerous mental disorder so that retention at a secure facility is not required *(see, People v Stone,* 73 NY2d 296, 300) and to protect the welfare and safety of the community *(see, People v Stone, supra,* at 303). The statute does not, however, contemplate that the end of the initial five-year period of validity of an order of conditions, which order may be extended *(see,* CPL 330.20 [1] [o]), will necessarily coincide with issuance of an order of transfer *(see,* CPL 330.20 [11]) or an order of release (CPL 330.20 [12]), the only two events possibly pertinent here which the statute specifically ties to an order of conditions. Nor does the statute specifically address cases where, as here, it is not disputed that the appellant no longer has a dangerous mental disorder but has nonetheless been the subject of a series of subsequent retention orders because he is mentally ill.

It is my view that the absence of an all-inclusive statutory structure is indicative of a legislative intent that the scheme was to have some flexibility in its application and that a court confronted with a request for a retention order was to be authorized, in suitable circumstances, to impose such conditions as are reasonably necessary or appropriate *(see,* CPL 330.20 [1] [o]; *cf.,* CPL 330.20 [10]). I therefore do not agree with the suggestion made by my colleagues, apparently premised on a literal construction of the statute without regard to its purpose, that the County Court possessed no inherent or statutory power to, e.g., resurrect, change, extend or add to the order of conditions which was required to have been issued *(see,* CPL 330.20 [11]) when, in 1985, Albert F. was transferred from a secure facility to the nonsecure facility where he has since resided, simply because his status as a mentally ill person has remained unchanged. I do, however, agree that the conditions to which Albert F. now objects which were attached to the most recent retention order were improperly imposed.

Having effectively precluded participation on the otherwise unopposed retention application by the district attorneys of two concerned counties, the County Court, virtually without notice to Albert F. and without making evidentiary inquiry *(cf.,* CPL 330.20 [9]), nonetheless imposed the conditions that the People now here defend. The propriety of the County Court's denial of the applications for leave to intervene is not now before this court. Apart from the fact that the district attorneys' participation might have prompted appropriate inquiry and afforded Albert F. the opportunity to be heard, it

appears in any event, as my colleagues conclude, that the conditions which the County Court imposed and which concern the manner in which Albert F. is to be supervised on facility grounds should have initially been the subject of internal administrative consideration (see, 14 NYCRR 541.5, 541.9). I therefore concur that the resettled order should be reversed insofar as appealed from.