■ In the Matter of OSWALD N., Appellant. [618 NYS2d 369] — In a proceeding pursuant to CPL 330.20 (1) (o), the defendant appeals from an order of the Supreme Court, Queens County (Pitaro, J.), dated July 16, 1993, which granted the petitioner's application for an extension until June 7, 1996, of an order of conditions. The appeal brings up for review an order of the same court (Naro, J.), dated March 3, 1993, which, upon granting a hearing on the application, held that CPL 330.20 (1), "in the opinion of this Court, does not fix a ten year ceiling as argued by counsel for the Mental Hygiene Legal Service".

Ordered that the order is reversed, on the law, without costs or disbursements, and the application is denied.

The Supreme Court improperly granted the petitioner's application for an extension of an order of conditions. CPL 330.20 (1) (o) provides, in pertinent part, that an order of conditions is "valid for five years from the date of its issuance, except that, for good cause shown, the court may extend the period for an additional five years". Based on the plain language of this provision, a court's supervisory capacity over a defendant acquitted of a crime by reason of mental disease or defect is limited to 10 years (see, e.g., Matter of Martin B., 138 Misc 2d 685; see also, People v Stone, 138 AD2d 4, revd on other grounds 73 NY2d 296). Because the appellant had been

subject to an order of conditions since 1981, an additional extension until 1996 was impermissible.

Reviewing the statute in its entirety warrants the same conclusion. The Legislature, with respect to retention orders, clearly set out that there may be a first, second and *subsequent* retention orders (CPL 330.20 [1] [g], [h], [i], [j]; [8], [9]). Thus, the statute provides that a defendant can be retained indefinitely through the issuance of subsequent retention orders. Further, the defendant can be recommitted as often as deemed necessary, provided the defendant is under a valid order of conditions (CPL 330.20 [14]; *see also, People v Stone,* 73 NY2d 296, 303, *supra).* With respect to an order of conditions, on the other hand, the statute merely states that it can be extended an additional five years.

Finally, we note that the New York State Commissioner of Mental Health has submitted proposed legislation which would change the language of CPL 330.20 (1) (o) to provide that an order of conditions could be extended for *additional periods.* This belies his argument on appeal that the provision, in its present form, clearly provides unlimited extensions of the order of conditions.

Because the application for a second order of conditions is denied, we need not reach the appellant's remaining contentions. Bracken, J. P., Copertino and Joy, JJ., concur.

Miller, J., dissents and votes to affirm, with the following memorandum, with which Hart, J., concurs. I do not agree with the majority's interpretation of CPL 330.20 (1) (o). While the language of this provision is subject to different interpretations, its purpose is clear. I find that the statutory construction most consonant with overriding legislative intent, the construction that is most internally consistent with other provisions of the statute and with the overall statutory scheme, directs that an order of conditions may be extended for additional five-year periods, so long as good cause is shown. As good cause was clearly demonstrated in this case, I would affirm the order appealed from.

THE FACTS

The facts underlying this appeal are uncontroverted. At the time the instant application was filed, the appellant Oswald N. was a 66-year-old man with an extensive history of psychiatric hospitalizations. Among other things, he suffered from persecutory delusions and auditory hallucinations. On July 17, 1966, while on a weekend pass from Creedmore Psychiatric Center, the appellant strangled his wife of two months. He was ultimately acquitted of all criminal charges, on the

ground that he was not responsible due to mental illness, and he was remanded to the custody of the New York State Commissioner of Mental Health for commitment by order dated March 19, 1976.

By order dated November 23, 1981, the appellant was released from commitment subject to an order of conditions pursuant to CPL 330.20 (12). By orders dated February 10, 1988, and May 22, 1989, the order of conditions was extended for periods not to exceed one year. The instant application was brought on or about May 15, 1990, seeking an extension for an additional five-year period.

The appellant's treating psychiatrist, Dr. Luvisminda Kapunan, submitted an affidavit which diagnosed the appellant as suffering from paranoid schizophrenia. Dr. Kapunan recounted that the appellant acknowledged that he had "a sick mind which can play tricks", but, according to the doctor, the appellant attributed his condition to the devil. The appellant reportedly revealed to Dr. Kapunan that the appellant recently had heard the devil instruct him to "sock" the appellant's brother. Following that incident, the appellant's medication, prolixin decanoate, was adjusted. Dr. Kapunan opined that the appellant's prognosis remained guarded and that the order of conditions should be extended for a period of two years.

Additionally, a hearing was held before Justice Pitaro. Dr. Kapunan reiterated her diagnosis and recounted that the appellant had strangled his wife because her "face turned into a devil and, in response to the voices [the appellant] strangled her". Dr. Kapunan testified that the appellant continues to report auditory hallucinations. Dr. Kapunan added that in 1989 the appellant did in fact punch his brother in response to auditory hallucinations.

Dr. Kapunan opined that the order of conditions should be extended because, pursuant thereto, the appellant has been receiving medication which reduced the frequency of the auditory hallucinations. Dr. Kapunan noted that the appellant generally denied that he suffered from mental illness. Therefore, she did not believe that he would continue to voluntarily report for his biweekly medication injections, absent an order of conditions. Dr. Kapunan believed that the appellant's symptoms might be controlled through continued intravenous medication, but she questioned the efficacy of switching the appellant to oral medication, given the comparative success of the injections.

Dr. Kapunan acknowledged that presently the appellant did not pose a danger to himself or to others and that he did not need to be hospitalized. However, she opined that it was only the order of conditions which compelled the appellant to come for his biweekly injections, and if he terminated his medication, the hallucinations and other symptoms could recur with greater frequency.

Dr. Asariah Eskenazi, a forensic psychiatrist, examined the appellant pursuant to the court's directive. Dr. Eskenazi opined that the appellant suffered from chronic schizophrenia, undifferentiated type, and that this condition was "somewhat" controlled by medication. Dr. Eskenazi confirmed that the appellant suffered from auditory hallucinations, which the appellant attributes to the devil. Dr. Eskenazi, however, did not believe that the appellant's condition was stabilized by the prolixin, but the appellant did not need to be hospitalized as long as he saw a psychiatrist at least biweekly to ensure that his condition had not deteriorated. Dr. Eskenazi acknowledged the possibility that the appellant might continue his medication on a voluntary basis, but the possibility also existed that he might not. Dr. Eskenazi thus gave his "strongest recommendation" that the order of conditions should be extended. Dr. Eskenazi opined that given the appellant's history, if he ceased his medication, his psychotic symptoms would increase "and we know what happens with that".

The court extended the order of conditions for a period of three years from the date of the hearing.

STATUTORY CONSTRUCTION

The majority does not contest the court's conclusion that good cause was demonstrated to justify an extension of the order of conditions. Rather, it construes CPL 330.20 (1) (o) to limit the authority of the court to impose an order of conditions for one five-year period, and then for an additional five years, finding the statutory language clear and unambiguous, and holding that it must therefore be applied in accordance with its plain language. I do not read the statute in the same manner, since I find the language subject to more than one interpretation. For reasons stated below, I would resolve its ambiguity in favor of authorizing the court's issuance of an order of conditions at the end of every five-year period where good cause is shown.

In order to construe the meaning of CPL 330.20 (1) (o) we must first consider the statutory scheme of which it is a part.

CPL 330.20 creates a three-track scheme of procedure and

treatment for defendants absolved of responsibility for a criminal act by reason of mental disease or defect. Track one deals with those defendants such as Oswald N., initially found to have a dangerous mental disorder. Track two deals with those defendants initially found to be mentally ill but who were not considered dangerous. Track three deals with those defendants initially found to be neither mentally ill nor dangerous (see, CPL 330.20 [6], [7]; see also, Matter of Jill ZZ., 83 NY2d 133). Oswald N. is a track one defendant since he was initially found to have a dangerous mental condition. Under track one, such a defendant remains confined to a secure facility for six months and may be subject to continued judicial supervision thereafter, for one year, and then for additional two-year periods, until adjudicated no longer dangerous (see, CPL 330.20 [1] [f], [g], [h], [i]; [6], [7]). Thereafter, if the defendant is found to be mentally ill within the meaning of the statute (see, CPL 330.20 [1] [d]) the court must issue a transfer order transferring the defendant to a nonsecure facility under the jurisdiction of the New York State Commissioner of Mental Health (hereinafter the Commissioner) (see, CPL 330.20 [11], [12]). Once the defendant is found not to be dangerous or mentally ill, the court must issue a release order and an order of conditions (see, CPL 330.20 [12]). Thereafter, at any time during the effective period of the order of conditions, and only during the period when there is in existence an order of conditions, the Commissioner or the District Attorney may apply to the court for a recommitment order (see, CPL 330.20 [14]; see also, People v Stone, 73 NY2d 296; Report of NY Law Rev Commn, The Defense of Insanity in New York State, 1981 McKinney's Session Laws of NY, at 2276-2277 [flow chart]).

Pursuant to CPL 330.20 (1) (o), an order of conditions "means an order directing a defendant to comply with [a] prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization. The order shall be valid for five years from the date of its issuance, except that, for good cause shown, the court may extend the period for an additional five years" (emphasis added).

CPL 330.20 (1) (o) was enacted to permit the courts to maintain a supervisory role over those persons absolved of responsibility for their criminal acts on account of mental disease or defect who are no longer suffering from a dangerous mental disorder, and to protect the welfare and safety of the

community *(see, People v Stone, supra,* at 300, 303; *Matter of Albert F.,* 173 AD2d 821, 822-823; *see also, Matter of Jill ZZ., supra,* at 138). The statutory language critical to this decision has not, prior to this decision, been interpreted by any appellate court.

The significance of this Court's construction of the meaning of the critical language "for an additional five years" is obviously great. Defendants acquitted on the ground that they are not responsible by reason of a mental disease or defect are released from institutions on medication that acts merely as a control and not a cure of their conditions, and can only be monitored during the course of an order of conditions. Moreover, they can only be criminally recommitted (if indeed their conditions change), if such an order of conditions exists. Thus, absent the existence of such an order of conditions, a potentially dangerous nonresponsible acquittee will be totally free of any obligation to be monitored to determine whether he or she is properly medicated or medicated at all. Nor will he or she be subject to recommitment pursuant to the CPL absent an order of conditions. Thus, such a person becomes a ticking time bomb capable of violence with no warning given. The important issue before this Court is therefore whether or not the statutory language "an additional five years" is so crystal clear that upon its unambiguous mandate we must substantially imperil our citizens, at least until such time as the Legislature acts to amend the statute. I find that the language is far from clear, and that our mandate is to interpret the statutory ambiguity consistent with the statutory scheme and legislative intent so as to protect society as well as the well-being of the acquittee.

THE AMBIGUITY

Had the Legislature intended to limit orders of conditions to a maximum period of 10 years (an initial five-year order and an extension for an additional five years based upon a showing of good cause) it could easily have so provided, as it did in language employed in other provisions of the statute. For example, in defining first and second retention orders, and subsequent, furlough and examination orders, the Legislature provided clear self-limiting language extending such orders "for a period *not to exceed* one year", *"not to exceed* two years", *"not exceeding* 14 days", and *"not exceeding* 30 days" (CPL 330.20 [1] [g], [h], [k]; [4] [emphasis supplied]). Had such language been employed in limitation of orders of condition, and had the Legislature provided for "one additional period not to exceed five years", I would be constrained to concur with my colleagues and find the statute unambiguous. The

Legislature's failure to employ that same limiting language with regard to orders of conditions is persuasive evidence that it had no similar intention to so limit the court's discretion in extending such orders for good cause shown. Furthermore, had the Legislature so intended to limit the time frame for orders of conditions absolutely at foreseeably grave social consequences, some reference to its underlying rationale should logically be found in the statute's legislative history, or at least in the purposes clause. Yet nowhere in the legislation itself or in its history is there any indication that this indeed was the legislative intent.

It is equally true that the statute similarly fails to provide clear language indicating the court's continuing authority to create successive subsequent periods extending orders of conditions for good cause shown, at the end of each five-year period, as it might have. However, my contention is not that the statutory language is clear, and that the legislation is unambiguous, but rather, to the contrary, that it is unclear and subject to more than one interpretation and that therefore we must construe it in light of the overall statutory scheme and legislative intent.

The Legislature's objectives in enacting this statute were to ensure the safety of the public and to safeguard the rights of defendants found not responsible by reason of mental disease or defect, as well as to provide treatment for acquittees suffering from a current mental illness. Orders of conditions and recommitment provisions of the statute were designed to ensure that all persons who develop or relapse into a dangerous mental disorder during the pendency of an order of conditions are amenable to a secure psychiatric placement (see, People v Stone, supra, at 302-303, citing Report of NY Law Rev Commn, The Defense of Insanity in New York State, 1981 McKinney's Session Laws of NY, at 2251, and Approval Mem of Governor Carey, L 1980, ch 548, 1980 McKinney's Session Laws of NY, at 1879, 1880). The Legislature expressly intended that an acquittee remain subject to the court's jurisdiction until such time as the court becomes satisfied that the acquittee's discharge is consistent with the public safety and welfare of the community and the acquittee (see, CPL 330.20 [13]). The five-year period prescribed was in all likelihood intended to ensure judicial review of the order of conditions and the acquittee's status during every five-year period.

In this case, the uncontested testimony of the two expert psychiatric witnesses clearly demonstrate that the appellant is mentally ill. He is suffering from paranoid schizophrenia, an

incurable condition, and he is at least potentially dangerous. The potential greatly increasing in the event he stops receiving the biweekly intravenous anti-psychotic medicine which has apparently stabilized his condition to some degree. Certainly, the Legislature was aware when this statute was enacted in 1980, that for conditions such as the appellant's, continuing supervision pursuant to orders of conditions is absolutely mandatory in order to ensure public safety.

The Law Revision Commission's Report underlying the Insanity Defense Reform Act of 1980 (L 1980, ch 548), made clear: "Insofar as psychiatry cannot now guarantee the safety of the public from future dangerous acts of persons found not responsible (Diamond, *From Durham to Brawner, A Futile Journey,* 173 Wash.U.L.Q. 109, 117 (1973)), and will most likely be unable to do so in the foreseeable future, the procedures governing commitment, treatment and release of such defendants are critically important. The end result of the use of the insanity defense—the mental condition of the defendant when released into the community—is the basis of public and professional concern regarding the defense of insanity" (Report of NY Law Rev Commn, *The Defense of Insanity in New York State,* 1981 McKinney's Session Laws of NY, at 2261).

Given the Legislature's understanding of the state of the art of psychotropic medication in 1980, it could not rationally have intended to subject the public to the enormous risk that would be created by abandonment of all supervision of the acquittee whose potential violent conduct is controllable only when medicated. Certainly, nothing in the Law Revision Commission Report indicates any intention that orders of conditions be automatically terminated within 10 years of the first order of conditions.

To the contrary, the Commission clearly envisioned the issuance of consecutive orders of conditions generally, insofar as orders of conditions must be issued when, *e.g.,* after a commitment hearing an acquittee is found mentally ill (CPL 330.20 [7]), when an acquittee is transferred from a secure to nonsecure facility (CPL 330.20 [11]), and a subsequent order of conditions must be issued along with a release order (CPL 330.20 [12]) *(see,* Report of NY Law Rev Commn, *op. cit.,* at 2270).

Moreover, the Commissioner is responsible for determining that a released defendant no longer suffers from a dangerous mental disorder so that an order of conditions will be terminated pursuant to a discharge order (Report of NY Law Rev Commn, *The Defense of Insanity in New York State,* 1981

McKinney's Session Laws of NY, at 2270-2271; CPL 330.20 [13]). Clearly, the majority's interpretation of CPL 330.20 (1) (o) is inconsistent with the statutory scheme in that it divests the Commissioner of the discretion granted by the Legislature. The majority's interpretation would provide for automatic discharge and termination of all supervision for an acquittee, such as the appellant, whose condition will pose a danger to the community if left unmedicated. Such a result, relieving the State of all responsibility to its citizens, could not have been intended.

Nor has the Legislature's failed attempt to enact a proposed amendment to the definition of an order of conditions left us with no alternative but to construe the current definition as limiting orders of conditions to a total of no more than 10 years. Assembly Bill No. 6437, introduced March 29, 1993, would have eliminated the ambiguity evident herein and would have forever forestalled the Mental Hygiene Legal Service from raising this argument again. However, a legislative committee's failure to vote on a bill containing one small relevant provision among other significant measures, is hardly tantamount to an express legislative declaration that the current version of the statute is clear in its meaning and application. Nor is the Commissioner of Mental Hygiene estopped from arguing that the current law does not limit extensions to one five-year period by virtue of his proposal to "clarify" an ambiguous provision (see, Mem of Office of Mental Health in support of Assembly Bill 6437, OMH #10R-93, at 2). If anything, the intended amendment confirms my contention that the statute is indeed ambiguous and requires clarification and defies the contrary position of the majority that the meaning of the statute is clear and must be construed in accordance with its plain meaning. In short, there is no rational valid basis of support for the majority's conclusion. Rather, common reason dictates that orders of conditions should, and were meant to be, available so long as a medical need exists.

JUDICIAL PRECEDENT

At the outset, it must be acknowledged that neither of the cases cited by the majority support the proposition that an order of conditions can only be in effect for a total period not to exceed 10 years. *Matter of Martin B.* (138 Misc 2d 685) was a case involving constitutional challenges to CPL 300.20 (1) (o) insofar as it permitted an initial order of conditions to be extended a first time for good cause. Similarly, *People v Stone* (138 AD2d 4, *revd* 73 NY2d 296) dealt with recommitment of an acquittee who was subject to an order of conditions. More-

over, the Appellate Division, First Department, in *Stone* (138 AD2d 4, *supra)* did not approve of a 10-year cap on orders of conditions, but merely reiterated the People's contention in that case that such a limitation existed. Indeed, these cases provide no more authority for the majority's conclusion than does *Matter of Oliver C. v Weissman* (203 AD2d 458) support my dissent, since in that case, this Court noted the issuance of consecutive orders of conditions without deciding the propriety thereof. Bearing in mind that opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts *(see, Matter of Curcio v Boyle,* 147 AD2d 194, 197), neither of the cases cited by the majority supports its conclusion as the precise issue at bar was not in controversy. In juxtaposition to the absence of authority in support of the majority's conclusion, two courts have expressly determined that CPL 330.20 (1) (o) does not preclude the imposition of consecutive orders of conditions where warranted. In *Matter of Michael H.* (Sup Ct, Broome County, Mar. 27, 1992, Fischer, J.), the court construed this ambiguous statute to permit a second order of conditions on the ground that such a result was consistent with legislative intent. That holding was followed by the court in *Matter of Oliver C.* (County Ct, Suffolk County, June 16, 1993, Weissman, J.).

DEFENDANT'S CONSTITUTIONAL RIGHTS

Nor are the appellant's constitutional rights violated by permitting extensions of an order of conditions with good cause shown beyond 10 years. Prior to the Insanity Defense Reform Acts of 1980 (L 1980, ch 548) standards for commitment and release of insanity acquittees were more restrictive than those applied to other civilly committed persons. The courts addressed these due process and equal protection concerns in several cases *(see, Baxstrom v Herold,* 383 US 107 [providing a judicial hearing to determine dangerous propensities of civilly-committed patients but denying the same to a person nearing the end of a prison term merely because he is a criminal defendant is a violation of equal protection]; *Jackson v Indiana,* 406 US 715, 730 [subjecting insanity acquittee to "more stringent standard of release than those generally applicable to all others not charged with offenses" is a violation of the Equal Protection Clause]; *Matter of Torsney,* 47 NY2d 667 [commitment of an insanity acquittee without a hearing to determine present mental condition and dangerousness constitutes a violation of due process and equal protection]). However, it is well settled, even in cases attempting to bring the penal standards more into line with civil commit-

ment standards, that there are "important differences between the class of potential civil-commitment candidates and the class of insanity acquittees" that justify different treatment *(see, Jones v United States,* 463 US 354, 367; *Matter of Torsney, supra).* The courts may constitutionally apply greater restraints upon an insanity acquittee than other mentally ill persons, if the restraints are clear and well defined *(see, People v Ortega,* 127 Misc 2d 717). The Legislature was fully aware of this permissible distinction in enacting CPL 330.20, basing the revision on the Commission's report, which stated: "The Commission's recommendations for remedying the defects in CPL 330.20 are based on the conclusion that moderate, rational differences between procedures for commitment and release applicable to defendants found not responsible and person involuntarily committed under the Mental Hygiene Law are justifiable, *inter alia,* on the ground that an acquitted defendant, himself, has asserted that his criminal conduct was the result of a mental disease or defect" (1981 Report of NY Law Rev Commn, *The Insanity Defense in New York State,* 1981 McKinney's Session Laws of NY, at 2264).

Thus, the appellant's claim that he is subject to "infinite jeopardy" of being recommitted as long as an order of conditions remains effective, is without merit. The Supreme Court has explicitly held that an insanity acquittee need not be released simply because he has been confined for a period longer than he might have been incarcerated had he been convicted *(see, Jones v United States, supra,* at 368). Furthermore, in *People v Escobar* (61 NY2d 431), the Court of Appeals noted that placing the burden on the District Attorney, rather than on the acquittee, provides greater due process protection than is required under the Federal Constitution *(see, Jones v United States, supra* [upholding a District of Columbia statute requiring the acquittee to establish that he had regained his sanity in order to be released]). Here, for the appellant to be recommitted, the People would bear the burden of proving by a fair preponderance of the credible evidence not only that he was no longer merely potentially dangerous, but that he did in fact have a dangerous mental disorder *(see,* CPL 330.20 [14]; *see also, People v Escobar, supra,* at 435). Similarly, to extend an order of conditions, which is even less restrictive than custody, the burden is on the People to demonstrate "good cause" *(see, Matter of Martin B.,* 138 Misc 2d 685, 694, *supra).*

Due process requires that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed" *(Jackson v Indiana,* 406

US 715, 738, *supra*). But because it is impossible to predict how long it will take for an acquittee to recover, it is permissible to leave the length of commitment indefinite, subject to periodic review *(see, Jones v United States, supra,* at 369). Here, the continuation of an order of conditions is far less restrictive of the appellant's liberty interest than would be involuntary commitment *(see, Warren v Harvey,* 632 F2d 925). The order requires the appellant merely to attend an outpatient clinic every two weeks or as often as the clinic deems necessary. In addition, the appellant must comply with treatment and medication, which he would have to do in any event to keep his anti-psychotic symptoms to a minimum. Periodic review will be afforded at which time the court will be required to order the least restrictive level of custody or supervision. Therefore, it cannot be said that in light of the appellant's history and current mental state, the minimal conditions imposed do not bear a reasonable relation to the purpose of an order of conditions, which is to provide court supervision over an acquittee in the interest of protecting the public as well as the well-being of the acquittee. This is especially true in the instant case, where the order of conditions relates primarily to ensuring proper treatment.

Accordingly, as the letter of the law does not compel the majority's interpretation thereof, and the spirit is clearly not served thereby, and since good cause was clearly shown, I would affirm the order appealed from extending the order of conditions for no more than three years.