[622 NYS2d 169]

In the Matter of PHEINIHAS BOWLES, Respondent. NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, Appellant. (Appeal No. 1.)

Fourth Department, November 16, 1994

APPEARANCES OF COUNSEL

*Kingsley & Towne, P. C.,* Albany *(John Kershko* and *James T. Towne, Jr.,* of counsel), for appellant.

*G. Oliver Koppell, Attorney-General,* Albany *(Julie Mereson* and *K. Wade Eaton* of counsel), for respondent.

OPINION OF THE COURT

PINE, J. P.

Petitioner, New York State Office of Mental Retardation and Developmental Disabilities (OMRDD), sought amendment of an order of conditions issued under CPL 330.20 to permit temporary retention of respondent in the Monroe Secure Unit for Intensive Treatment (SUIT) until a suitable community-based program for respondent had been identified or developed. The issue on this appeal is whether County Court abused its discretion in finding that petitioner thereby engaged in frivolous conduct and in imposing a sanction of costs and attorney's fees on petitioner pursuant to 22 NYCRR 130-1.1.

In 1985 respondent was committed to SUIT pursuant to CPL 330.20 (6), based on a finding that he was suffering from a dangerous mental disorder. Retention orders were granted based on subsequent psychiatric evaluations finding that his condition continued. In May 1990 the court issued an order of release pursuant to CPL 330.20 (12) and an accompanying order of conditions incorporating a service plan. That plan included a provision that respondent would reside in a highly structured community residence.

On October 31, 1990, respondent engaged in violent conduct at the community residence that resulted in his arrest. Respondent returned voluntarily to SUIT on November 2, 1990, but on December 6, 1990, he told staff members that he no longer wished to remain there. After conferring with his attorney, he changed his mind.

On December 13, 1990, petitioner obtained an order to show cause why the court should not amend the order of conditions it had issued on May 15, 1990, to permit retention of respon-

dent by SUIT for up to six months or until a suitable community-based program for respondent had been identified or developed and authorizing retention of respondent at SUIT pending determination of the application.

The affidavit supporting the order to show cause stated that respondent had been evaluated after November 2, 1990, and that there was "no apparent neurological, organic, physical or psychiatric condition" responsible for his violent behavior, nor was there evidence that he was either mentally retarded or mentally ill as defined by CPL 330.20. It further stated that respondent's behavior presented such a substantial danger to the staff and other clients of the community residence that respondent could not be returned there and that there was no community-based program then in existence capable of providing services respondent needed to be maintained safely in a community setting. It opined that SUIT was the most appropriate available facility for respondent's care while it sought to identify or develop a suitable program.

Respondent opposed the application on the ground that it was fatally defective because it was not supported by an affidavit of a psychiatric examiner stating that respondent was dangerously mentally ill and thus that the statutory standard for recommitment was not met (see, CPL 330.20 [14], [20]). He sought sanctions for six days of improper involuntary confinement at SUIT.

On the return date of the order to show cause, petitioner's attorney conceded that CPL 330.20 did not specifically authorize petitioner's application but argued that the court had inherent authority to grant appropriate relief.

The court vacated the temporary order restraining respondent on the ground that it was unauthorized, directed a further evaluation of respondent and a hearing to determine whether the order of conditions should be amended, and stated that it would entertain an application for sanctions. In the meantime, respondent was returned to the community residence.

On March 12, 1991, the court rendered a decision and order reciting that petitioner had submitted an extensive report, dated January 24, 1991, based on a number of psychological and psychiatric evaluations, recommending that respondent continue at the community residence. The court found that the order to show cause presented to it in December was unnecessary and unauthorized, that the information in the

January report should have been known to petitioner at the time of its December application, and that the conduct of petitioner in bringing the order to show cause constituted inappropriate and frivolous action warranting sanctions. It specifically found:

"1) An inappropriate and defective application without merit in law or fact in obtaining the Order to Show Cause dated December 13, 1990.

"2) Holding the [respondent] in secure custody without appropriate reasons.

"3) Continuing with the application in spite of the findings in the submitted report by the petitioner."

Based on those findings, it ordered as a sanction that petitioner pay costs and respondent's reasonable attorney's fees, to be set at the maximum of $10,000 unless petitioner responded in detail to respondent's fee affidavit by April 1, 1991.

A hearing on attorney's fees was held on January 11, 1993. By decision and order dated May 5, 1993, the court granted attorney's fees in the amount of $5,612.50 for services from December 9, 1990 through January 15, 1991; it denied fees for work before December 9 and for work in connection with a separate writ of habeas corpus. The court "delete[d]" the $10,000 fine based on "the extraordinary subsequent efforts of petitioner to resolve the complex issues related to the needs of the respondent."

There is no dispute that respondent violated the order of conditions that was statutorily required upon his release from a secure facility (see, CPL 330.20 [12]). The Commissioner of OMRDD was responsible for assuring that respondent complied with the order of conditions (see, CPL 330.20 [12]), and the court also retained supervisory responsibilities over respondent (see, Matter of Jill ZZ., 83 NY2d 133, 138). The statutory framework of CPL 330.20 does not include a specific procedure for a case such as this, where a violation of the order of conditions has occurred but the person released does not have a "dangerous mental disorder" within the meaning of CPL 330.20 (1) (c), and thus is not subject to recommitment pursuant to CPL 330.20 (14). Petitioner argued in support of its application, however, that the court had inherent authority to grant it (see, e.g., People ex rel. Thorpe v Von Holden, 63 NY2d 546). We are not required to determine whether the court had inherent authority to hold respondent temporarily under those circumstances. Indeed, we emphasize that the

prohibitions against involuntary confinement are to be guarded zealously. We conclude, however, that petitioner's application for an order to show cause, which was granted by the court, did not constitute frivolous conduct (see, e.g., Parks v Leahey & Johnson, 81 NY2d 161).

In determining respondent's application for sanctions, the court was required to consider "the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent or should have been apparent to counsel" (22 NYCRR 130-1.1 [c]). At the time the order to show cause was sought, respondent had been voluntarily at SUIT for over a month. He had given notice that he would not remain there voluntarily, and then changed his mind. Four of the five tests underlying the report ordered by the court on the return date of the order to show cause on December 19, 1990 were performed in January 1991 and the results could not have been known at the time the order to show cause was sought. A neurological examination performed on November 26, 1990 revealed no identifiable neurological illness. It cannot be said that petitioner's application was completely without merit in law or fact and could not be supported by a reasonable argument for extension of existing law (see, 22 NYCRR 130-1.1 [c]).

Accordingly, the award of attorney's fees and costs should be vacated.

LAWTON, FALLON, DAVIS and BOEHM, JJ., concur.

Order unanimously reversed, on the law, without costs, and application denied.