[778 NYS2d 180]

# In the Matter of SHELDON S., Appellant. COMMISSIONER OF NEW YORK STATE OFFICE OF MENTAL HEALTH et al., Respondents.

Second Department, June 1, 2004

## APPEARANCES OF COUNSEL

*Sidney Hirschfeld*, Mineola (*Lisa Volpe* and *Dennis B. Feld* of counsel), for appellant.

*Eliot Spitzer, Attorney General*, New York City (*Marion R. Buchbinder* and *Edward J. Curtis, Jr.,* of counsel), for Commissioner of New York State Office of Mental Health, respondent.

*Charles J. Hynes, District Attorney*, Brooklyn (*Anne Swern, Caroline R. Donhauser* and *David C. Kelly* of counsel), respondent pro se.

## OPINION OF THE COURT

PRUDENTI, P.J.

On the morning of March 26, 1999, the appellant, Sheldon S., assaulted three women and sexually abused two of them during a sudden outburst of violence in an apartment building in Brooklyn. On June 12, 2000, Sheldon S. entered a plea of not responsible by reason of mental disease or defect to a 21-count indictment, which charged him with various degrees of burglary, assault, sexual abuse, and attempted rape, stemming from the attack. Upon accepting the plea, the Supreme Court followed the procedure set forth in CPL 330.20, which governs the commitment, retention, and release of defendants who have successfully invoked the insanity defense.

After the requisite psychiatric examinations, the Supreme Court conducted an initial commitment hearing pursuant to CPL 330.20 (6) to determine Sheldon S.'s present mental condition and an appropriate placement. At the hearing, three psychiatrists testified that Sheldon S. suffered from a dangerous mental disorder which required treatment in a secure psychiatric facility. Among other factors, they noted that Sheldon S. had a long history of substance abuse, lacked insight into his mental illness, and repeatedly failed to comply with the prescribed treatment. On the other hand, the court-appointed psychiatrist, Dr. Azariah Eshkenazi, testified that Sheldon S. was not dangerous and should be placed in a drug treatment program. In support of his opinion, Dr. Eshkenazi noted that Sheldon S.'s medical records included a myriad of vague diagnoses, which made it difficult to ascertain whether the recent onset of psychotic symptoms was drug-induced or the product of an underlying mental disorder.

In an order dated November 16, 2001, the Supreme Court determined that Sheldon S. did not have a dangerous mental disorder but was mentally ill as those terms are defined in CPL 330.20 (1) (c) and (d). Accordingly, the court issued a civil commitment order pursuant to CPL 330.20 (7), committing Sheldon S. to the custody of the Commissioner of the New York State Office of Mental Health (hereinafter the Commissioner) for care and treatment for a period not to exceed six months. In addition, the court issued an order of conditions, which, inter alia, directed Sheldon S. to comply with his treatment plan for five years unless the order was terminated earlier or extended.

A few weeks after the initial commitment hearing ended on October 18, 2001, the Kings County District Attorney (hereinafter the District Attorney) learned that Sheldon S. had assaulted two corrections officers at Riker's Island on September 3, 2001, and severely decompensated to the point where he had to be temporarily transferred to Bellevue Hospital on November 6, 2001. Although the Supreme Court denied the District Attorney's request to reopen the hearing based on this new information, it granted his request for an updated psychiatric evaluation.

On April 30, 2002, the District Attorney served and filed an application for a recommitment order pursuant to CPL 330.20 (14) on the ground that Sheldon S. currently suffered from a dangerous mental disorder. By notice of motion dated June 18, 2002, the Mental Hygiene Legal Service (hereinafter MHLS) moved, on Sheldon S.'s behalf, to dismiss the recommitment application on the grounds that, inter alia, the Supreme Court lacked personal jurisdiction and the District Attorney's attempt to relitigate the issue of his mental status constituted an abuse of the commitment process. By order dated September 30, 2002, the Supreme Court granted the recommitment application to the extent of ordering a hearing to determine Sheldon S.'s current mental condition.

At the recommitment hearing, the psychiatrists retained by the District Attorney and the Commissioner both testified that Sheldon S. suffered from paranoid schizophrenia and that his recurrent drug abuse, violent outbursts, and resistance to psychiatric treatment, indicated that he was likely to become a danger to himself and others. Notably, the court-appointed psychiatrist, Dr. Eshkenazi, changed his previous opinion and agreed with their diagnoses. In a recommitment order dated March 25, 2003, the Supreme Court determined that Sheldon S.

had a dangerous mental disorder and committed him to the Commissioner's custody for confinement in a secure facility for care and treatment for six months. Sheldon S. appeals, by permission, from that order.

At the threshold, we note that the present appeal is not academic. Although the recommitment order dated March 25, 2003, expired by its own terms, the court's determination that Sheldon S. has a dangerous mental disorder has lasting consequences, which will affect all future proceedings regarding his commitment and release (*see Matter of George L.,* 85 NY2d 295, 302 n 2 [1995]; *Matter of Norman D.,* 309 AD2d 143, 144 [2003], *lv granted* 1 NY3d 503 [2003]; *People v Salem,* 122 AD2d 85, 86 [1986]). In any event, this case falls within the well-known exception to the mootness doctrine that permits the court to review important and recurring issues, which, by virtue of their relatively brief existence, would otherwise evade review (*see Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714 [1980]). Those exceptions are often invoked in the context of mental health commitment proceedings where the orders are relatively short in duration (*see Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500, 505-506 [1998]; *Matter of Chenier v Richard W.,* 82 NY2d 830, 832 [1993]; *Matter of Ernst J.,* 292 AD2d 528 [2002]).

In order to resolve the issues raised on this appeal, it is necessary to review some of the key provisions of CPL 330.20. Briefly, the statute provides three alternative dispositions, commonly known as "tracks," with different treatment modalities and procedural consequences, which are based on the court's determination at the initial commitment hearing that the defendant either: (1) has a dangerous mental disorder (track one); (2) does not have a dangerous mental disorder but is mentally ill (track two); or (3) does not have a dangerous mental disorder and is not mentally ill (track three) (*see* CPL 330.20 [6], [7]; *People v Stone,* 73 NY2d 296, 300 [1989]). At the initial hearing, the district attorney must prove, by a preponderance of the evidence, that the defendant either has a dangerous mental disorder or is mentally ill (*see* CPL 330.20 [6]; *People v Escobar,* 61 NY2d 431, 439-440 [1984]).

If the hearing court determines that the defendant has a dangerous mental disorder (track one), it must issue a commitment order placing him in a secure psychiatric facility for a period of six months (*see* CPL 330.20 [1] [f]; [6]). A track one defendant cannot be transferred, released, granted a community furlough, or discharged without court approval, and the district

attorney must receive notice of all proceedings relating to his or her status and placement (*see* CPL 330.20 [8]-[13]). If the court finds that the defendant does not have a dangerous mental disorder but is mentally ill (track two), the court must issue an order of conditions and an order committing him or her to the Commissioner's custody (*see* CPL 330.20 [6], [7]). The commitment order is deemed to be made pursuant to the Mental Hygiene Law, which governs the further retention, conditional release, and discharge of a track two defendant. Finally, if the court concludes that the defendant does not suffer from a dangerous mental disorder and is not mentally ill (track three), it must discharge him or her, either unconditionally or subject to an order of conditions (*see* CPL 330.20 [7]).

An order of conditions, which *must* be imposed on track two defendants, and *may* be imposed on track three defendants, enables the convicting court to maintain a supervisory role over insanity acquittees by directing them "to comply with [the] prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate" (CPL 330.20 [1] [*o*]; *see People v Stone supra* at 300). An order of conditions is valid for five years from the date it is issued and may be extended for successive periods of five years upon a showing of good cause (*see* CPL 330.20 [1] [*o*]); *Matter of Oswald N.,* 87 NY2d 98 [1995]).

The present appeal concerns the recommitment procedure set forth in CPL 330.20 (14), which provides, in relevant part, that "[a]t any time during the period covered by an order of conditions an application may be made by the commissioner or the district attorney to the court that issued such order . . . for a recommitment order when the applicant is of the view that the defendant has a dangerous mental disorder." Upon receiving the application, the court must conduct a hearing. If the applicant establishes, by a preponderance of the evidence, that the defendant has a dangerous mental disorder, the court must issue a recommitment order, which means that all future proceedings regarding his retention and release will be governed by CPL 330.20 (*see* CPL 330.20 [14]; *Matter of Francis S.,* 87 NY2d 554 [1995]).

On this appeal, Sheldon S. contends that the District Attorney, who failed to secure a track one designation at the initial commitment hearing, abused the commitment process by relitigating the issue of his track status under the guise of a recommitment application. In support of that contention, he claims that

the District Attorney knew, or should have known, about his altercation with the corrections officers at Riker's Island on September 3, 2001, and his hospitalization at Bellevue Hospital on November 6, 2001, and since those events occurred before the court issued the initial commitment order on November 16, 2001, there was no new evidence of a change in his mental condition to support the recommitment application.

Contrary to Sheldon S.'s contention, the record reveals that he was subject to an order of conditions, issued on November 19, 2001, when the District Attorney applied for a recommitment order on April 30, 2002. Thus, the District Attorney followed the procedure set forth in CPL 330.20 (14), which states that a recommitment application may be made at *"any time* during the period covered by an order of conditions . . . when the applicant is of the view that the defendant has a dangerous mental disorder" (emphasis added). Moreover, there is no evidence that the District Attorney deliberately withheld, or inexcusably neglected to present, any information at the initial commitment hearing regarding Sheldon S.'s deteriorated mental condition (*cf. People ex rel. Leonard HH. v Nixon,* 148 AD2d 75 [1989]).

In any event, by not contesting the merits of the recommitment order, Sheldon S. has, in effect, conceded that the District Attorney proved, by a preponderance of the evidence, that he had a dangerous mental disorder at the time of the recommitment hearing. Under these circumstances, the District Attorney did not abuse the recommitment process, which is designed to ensure that "all persons who develop or relapse into a dangerous mental disorder during the pendency of the order of conditions are amenable to a secure psychiatric placement" (*People v Stone, supra* at 303).

In addition, we reject Sheldon S.'s claim that the Supreme Court lacked personal jurisdiction because the District Attorney did not comply with the service requirements set forth in the CPLR for commencing a special proceeding. As we previously noted, Sheldon S. was subject to a valid order of conditions, which preserved the criminal court's jurisdiction and supervisory authority over him (*see Matter of Oswald N., supra* at 104; *Matter of Francis S., supra* at 562-563; *Matter of Jill ZZ.,* 83 NY2d 133, 135-138 [1994]; *People v Stone, supra* at 300).

Moreover, the District Attorney satisfied the notice requirements of CPL 330.20 (14) by mailing a copy of the recommitment application, by overnight delivery, to Sheldon S. at the

Kingsboro Psychiatric Center, in addition to his MHLS attorney, the executive director of the Kingsboro Psychiatric Center, the Commissioner, and the Attorney General of the State of New York. We also note that Sheldon S. does not dispute that he received adequate notice and an opportunity to be heard.

In sum, the Supreme Court properly entertained the District Attorney's application for a recommitment order based on new evidence that Sheldon S., who was initially designated as a track two insanity acquittee and subject to an order of conditions, should be reclassified as a track one insanity acquittee because he had a dangerous mental disorder which required treatment in a secure psychiatric facility. Accordingly, the order dated March 25, 2003 is affirmed.

RITTER, H. MILLER and CRANE, JJ., concur.

Ordered that the order dated March 25, 2003, is affirmed, without costs or disbursements.