[955 NYS2d 134]

# In the Matter of Robert T., Petitioner, v Christine A. Sproat et al., Respondents.

Second Department, November 28, 2012

### APPEARANCES OF COUNSEL

*Mental Hygiene Legal Service*, Mineola (*Lesley De Lia* and *Dennis B. Feld* of counsel), for petitioner.

*Eric T. Schneiderman, Attorney General*, New York City (*Susan Anspach* of counsel), for Christine A. Sproat and another, respondents.

### OPINION OF THE COURT

AUSTIN, J.

The petitioner was found not responsible for a crime by reason of mental disease or defect. As a result, on March 19, 1996, the County Court, Ulster County, remanded him to the custody of the respondent Commissioner of the New York State Office of Mental Health (hereinafter the Commissioner), pursuant to Criminal Procedure Law § 330.20, based upon a finding that he was dangerously mentally ill. By order of the Supreme Court, Dutchess County, dated August 1, 2002, the petitioner was released from confinement pursuant to a release order and order of conditions, which imposed a treatment plan effective for a period of five years. Thereafter, by order dated September 24, 2007, the order of conditions was extended until September 24, 2010.

In August 2010, the Commissioner moved to extend the order of conditions. The petitioner consented to the extension of the

order of conditions for an additional three years, but objected to the insertion of the condition in issue (hereinafter the disputed provision), which stated:

"ORDERED that should the [petitioner] fail to comply with any of the above conditions and refuse to appear for or comply with a psychiatric examination, the Commissioner shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility."

In an amended order of conditions pursuant to CPL 330.20 dated December 16, 2010, the respondent Christine A. Sproat, a Justice of the Supreme Court, Dutchess County, included the disputed provision.

The petitioner commenced this proceeding against Justice Sproat, the Commissioner, and the District Attorney of Ulster County, pursuant to CPLR article 78, to prohibit the enforcement of the disputed provision in the amended order of conditions. The petitioner asserted that the Supreme Court went beyond its authority in including the disputed provision in the amended order of conditions. He claimed that a temporary confinement order, such as the one authorized in the disputed provision, could only be obtained pursuant to an application for a "[r]ecommitment order" as governed by CPL 330.20 (14) since commitment orders are a creature of statute set forth in CPL 330.20. He maintained that the disputed provision authorized a secure confinement without regard for procedural safeguards and in contravention of his constitutional rights.

In their verified answer, the respondents contended that the Supreme Court was authorized by statute to "fashion reasonable conditions to be included in an Order of Conditions." They claimed that the disputed provision was permissible pursuant to CPL 330.20 (1) (o), which defines an order of conditions, in pertinent part, as "an order directing a defendant to comply with [a] prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization." The respondents also relied upon CPL 330.20 (12), which states, in pertinent part: "The order of conditions issued in conjunction with a release order shall incorporate a written service plan prepared by a psychiatrist familiar with the defendant's case history and approved by the court, and shall contain any condi-

tions that the court determines to be reasonably necessary or appropriate."

The respondents did acknowledge that the alternative to a temporary confinement provision is a "recommitment order" as set forth in CPL 330.20 (14), but maintained that the temporary confinement was a "less intrusive" means by which the Supreme Court could make certain that a petitioner would abide by the order of conditions. Further, they asserted that there was no statutory authority prohibiting the Supreme Court from utilizing this measure.

In reply, the petitioner argued that the provision at issue was not related to treatment but was instead a consequence if he failed to follow the treatment plan. As such, he contended that the disputed provision should not have been included within the amended order of conditions.

We begin our analysis of whether the petitioner is entitled to a writ of prohibition with a consideration of the nature of the remedy sought and the statutory framework which governs individuals found not responsible for a crime by reason of mental disease or defect. Pursuant to subdivision (3) of CPLR 7803, a petitioner may question "whether a determination was made in violation of lawful procedure." A writ of prohibition "is available only where there is a clear legal right, and then only when a court—in cases where judicial authority is challenged— acts or threatens to act either without jurisdiction or in excess of its authorized powers" (*Matter of Holtzman v Goldman*, 71 NY2d 564, 569 [1988]; *see Matter of Hynes v George*, 76 NY2d 500, 504 [1990]). Whether to grant prohibition, even where a justice or judge acts in excess of his or her legal powers, rests within the sound discretion of the reviewing court (*see Matter of Holtzman v Goldman*, 71 NY2d at 569). We find this case to be one of those extraordinary situations where prohibition is appropriate.

In a criminal case, when the verdict of not responsible by reason of mental disease or defect is entered against a person, or a person enters a plea of not responsible on that same ground and that plea is accepted, the court must immediately issue an order (hereinafter examination order) directing that person to submit to psychiatric examinations by qualified psychiatric examiners designated by the Commissioner to determine whether the person has a dangerous mental disorder or, if not, if the person is mentally ill (*see* CPL 330.20 [1] [e]; [2]). Thereafter, the reports of the psychiatric examiners are provided by the Commissioner to the court (*see* CPL 330.20 [5]).

Within 10 days after receipt of those reports, the court will conduct an initial hearing to determine the person's present mental condition (*see* CPL 330.20 [6]). Following that initial hearing, the person will be classified as either "track" one, two, or three (*see Matter of Jamie R. v Consilvio*, 6 NY3d 138, 142 [2006]). The track assigned to a person designates his or her level and nature of confinement or supervision (*see id.*). A person is found to have a dangerous mental disorder if he or she is mentally ill requiring inpatient care and treatment and is a physical danger to his or her self or others (*see* CPL 330.20 [1] [c]; *Matter of Jamie R. v Consilvio*, 6 NY3d at 145). The court will classify such a person as track one and commit him or her to a secure facility for an initial term of six months by issuing a "commitment order" (CPL 330.20 [6]; *see Matter of Jamie R. v Consilvio*, 6 NY3d at 142; *Matter of Norman D.*, 3 NY3d 150, 156 [2004]).

A person classified as track one is "subject to far more comprehensive supervision by the courts than track two and three patients" (*Matter of Jamie R. v Consilvio*, 6 NY3d at 143; *see Matter of George L.*, 85 NY2d 295, 301 [1995]). He or she will "remain confined in a secure facility subject to continued judicial supervision pursuant to CPL 330.20 until adjudicated no longer dangerous" (*Matter of Jill ZZ.*, 83 NY2d 133, 137 [1994]). The petitioner in this case was classified as track one, since the court initially found that he was suffering from a dangerous mental disorder.

"Once track status is determined, future confinement of the individual is determined through periodic 'retention' hearings that may result in retention orders authorizing [the Office of Mental Health] to continue to hold the patient in a secure or nonsecure facility" (*Matter of Jamie R. v Consilvio*, 6 NY3d at 143). With respect to an individual in track one, pursuant to CPL 330.20 (8), the Commissioner must, at least 30 days prior to the expiration of the six-month commitment period, apply to the court for a "first retention order or a release order." If the Commissioner submits an application for retention and a hearing is held, the Commissioner must establish that the individual has a dangerous mental disorder or is mentally ill (*see* CPL 330.20 [8]). If the application is for release, the burden is on the district attorney to establish that the individual has a dangerous mental disorder or mental illness (*see id.*). If the court determines that the person has a dangerous mental disorder, it must issue a "first retention order" (*id.*). A "[f]irst retention

order" authorizes continued custody of a person by the Commissioner for a period not to exceed one year (CPL 330.20 [1] [g]). If the court determines that the person is mentally ill but does not have a dangerous mental disorder, it must issue a first retention order, a "transfer order," and an order of conditions (*see* CPL 330.20 [8]). If the court finds that the person is neither suffering from a dangerous mental disorder nor is mentally ill, it must issue a release order and an order of conditions (*see id.*).

Following retention pursuant to a first retention order, the Commissioner must again apply to the court at least 30 days prior to the expiration of the first retention order, for a second retention order or release order following the same procedure as was set forth with respect to an application for a first retention order (*see* CPL 330.20 [9]). This second review takes place 18 months after the original finding (*see* CPL 330.20 [1] [h]). A "[s]econd retention order" authorizes "continued custody of a [person] by the [C]ommissioner for a period not to exceed two years" (*id.*) The same procedure is employed for any application for subsequent retention orders (*see* CPL 330.20 [9]). Those reviews are conducted once every two years (*see* CPL 330.20 [1] [i]).

The Commissioner can apply for a transfer order when he or she deems that a track one individual, in the Commissioner's custody pursuant to a retention or recommitment order, is no longer suffering from a dangerous mental disorder or that the person should be transferred from a secure facility to a nonsecure facility (*see* CPL 330.20 [11]). In the event that the court finds that a person designated as track one no longer suffers from a dangerous mental disorder, the court must grant the Commissioner's application and issue a transfer order directing the transfer of the person to a nonsecure facility (*see id.*). "Whenever a court issues a transfer order it must also issue an order of conditions" (*id.*).

If the Commissioner applies for a release order because he or she believes that the person does not have a dangerous mental disorder or a mental illness, the court must promptly conduct a hearing to determine the person's "present mental condition" (CPL 330.20 [12]). Should the court grant the application and issue a release order having found that the person does not have a dangerous mental disorder and is not mentally ill, it "must issue a new order of conditions" "incorporat[ing] a written service plan prepared by a psychiatrist familiar with the

[person's] case history and approved by the court, and . . . contain[ing] any conditions that the court determines to be reasonably necessary or appropriate" (*id.*).

"[T]he order of conditions is the vehicle by which the convicting court effectuates its continuing supervisory authority over" a person acquitted by reason of mental disease or defect (*Matter of Jill ZZ.*, 83 NY2d at 138). "These conditions may include required periodic visits to a specified outpatient facility, restrictions on a defendant's alcohol consumption or place of residence, or, if the defendant has been transferred to a nonsecure facility, the requirement that defendant not leave the premises without written authorization" (*Matter of Oswald N.*, 87 NY2d 98, 102 [1995] [citations omitted]). Failure to comply with the treatment plan specified in the order of conditions, followed by that person posing a danger to his or her self or others, may result in the court, "*upon a hearing*, recommit[ting] the defendant to a secure psychiatric hospital" (*id.* [emphasis added]).

During the pendency·of the order of conditions, the Commissioner or the district attorney may apply to the court for a recommitment of the defendant, if the "applicant is of the view that the defendant has a dangerous mental disorder" (CPL 330.20 [14]). "The applicant must give written notice of the application to the defendant, counsel for the defendant, and the mental hygiene legal service" (*id.*). Notice must also be given to the Commissioner or the district attorney depending on who makes the application (*see id.*). The defendant is then given notice, through personal service or by mail to his or her last known address, that the court is going to conduct a hearing to determine whether he or she has a dangerous mental disorder (*see id.*). The applicant has the burden at that hearing of proving that the defendant has a dangerous mental disorder (*see id.*). If the applicant meets that burden, the court must issue a recommitment order (*see* CPL 330.20 [14]). Based upon this statutory scheme, we find that requiring an application for the recommitment of an individual necessarily implicates the individual's due process right to be heard before being recommitted; even if only temporarily.

The disputed provision at issue, as an "additional condition," is not authorized by CPL 330.20 and improperly establishes an ex parte enforcement procedure for addressing violations of the amended order of conditions. Thus, this provision is violative of the due process protections afforded the petitioner under CPL article 330. The existing procedures mandated by the relevant

statutes and regulations are sufficient to protect the community and the petitioner. The creation of wholly new mechanisms of enforcement that mimic procedures prescribed by statute and regulation, but lack the same procedural safeguards, is unwarranted and troubling from a due process perspective.

As noted above, "[t]he retention, conditional release or discharge of a track one patient" such as the petitioner "is governed entirely by CPL 330.20" (*Matter of Jamie R. v Consilvio*, 6 NY3d at 143). Criminal Procedure Law § 330.20 contains no specific statutory procedure for dealing with an individual who has violated an order of conditions. However, CPL 330.20 (14) provides for the Commissioner or the district attorney to apply at any time during the period covered by an order of conditions for recommitment of the individual if the "applicant is of the view that the defendant has a dangerous mental disorder" (*see Matter of Bowles [New York State Off. of Mental Retardation & Dev. Disabilities]*, 206 AD2d 216, 219 [1994]). Under 22 NYCRR 110.12 (b), the court is permitted to issue a "temporary confinement order" directing the confinement of an individual brought before the court on the warrant issued pursuant to CPL 330.20 (14). Therefore, if an individual violates an order of conditions and has a history of dangerous mental disorder, it is clear that the proper procedure is an application for recommitment (*see e.g. Matter of Bowles*, 206 AD2d at 219).

Moreover, upon application for a recommitment order, the subject of the application is entitled to notice and an opportunity to be heard (*see Matter of Sheldon S.*, 9 AD3d 92, 98 [2004]; *Matter of K.L.*, 302 AD2d 388, 391 [2003], *affd* 1 NY3d 362 [2004]). The disputed provision in this case did not provide for notice and an opportunity to be heard, thus depriving the petitioner of statutorily prescribed due process protections.

CPL 330.20 (1) (*o*) and (12) cannot be conflated so as to ignore the due process protections of CPL 330.20 (14). "All parts of a statute must be harmonized with each other" (McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]; *see Sanders v Winship*, 57 NY2d 391, 395-396 [1982]), and to construe one part of the statute so as to permit nullification of another is impermissible (*see Matter of Albano v Kirby*, 36 NY2d 526, 530 [1975]).

Since the disputed provision was not specifically authorized by CPL 330.20, and actually conflicts with the provisions of CPL 330.20 (14) by failing to provide for notice and an opportunity to be heard, it was improperly imposed. The Supreme Court does not have authority to issue a "Temporary Confine-

ment Order" without notice until there is an application for recommitment—temporary or otherwise—on notice, in its current form. Therefore, enforcement of the disputed provision must be prohibited (*see* CPLR 7803 [2]; *Matter of Oliver C. v Weissman*, 203 AD2d 458, 459 [1994]).

Accordingly, the petition is granted, on the law, and the respondents are prohibited from enforcing or taking action to enforce the provision of the amended order of conditions dated December 16, 2010, which directed that should the petitioner fail to comply with any of the other provisions imposed in that order "and refuse to appear for or comply with a psychiatric examination," the Commissioner of the New York State Office of Mental Health "shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility."

RIVERA, J.P. (dissenting). In this original proceeding pursuant to CPLR article 78 in the nature of a writ of prohibition, the petitioner, an insanity acquittee, seeks to prohibit the enforcement of a provision contained in an amended order of conditions which directed that should he fail to comply with any of the remaining conditions set forth therein "and refuse to appear for or comply with a psychiatric examination," the Commissioner of the New York State Office of Mental Health "shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility" (hereinafter the disputed provision).

The primary issue presented is whether the Supreme Court exceeded its authority in issuing the aforementioned amended order of conditions containing the disputed provision. For the reasons that follow, I conclude that the petitioner has failed to establish that the disputed provision is not authorized. Accordingly, I would deny the petition and dismiss the proceeding.

### Factual Background

The petitioner, Robert T., who is currently 64 years old, has a long psychiatric history. His first admission, in September 1974, was for agitated and assaultive behavior at home. He was diagnosed as suffering from psychosis with epilepsy. Thereafter, on a readmission, in October 1983, he was diagnosed with adjustment disorder with depressed mood. In April 1995, while at his residence, he cut his wrists and was admitted to St. Francis Hospital in Poughkeepsie, New York. He was discharged on May 4, 1995.

Approximately two months after the aforementioned discharge from the hospital, on July 16, 1995, the petitioner intentionally drove his car into the opposite lane of traffic, purportedly in an attempt to commit suicide. He collided with another vehicle, killing its occupant. He was charged with manslaughter in the second degree. By order of the County Court, Ulster County, dated March 19, 1996, the petitioner was found not responsible by reason of mental disease or defect and was remanded to the custody of the Commissioner of the New York State Office of Mental Health (hereinafter the Commissioner), pursuant to CPL 330.20, based upon a finding that he was dangerously mentally ill. Thereafter, by order of the Supreme Court, Dutchess County, dated August 1, 2002, the petitioner was released from confinement pursuant to a release order and order of conditions, which imposed a treatment plan effective for five years. Subsequent to the issuance of the above-mentioned order of conditions, by order dated September 24, 2007, the Supreme Court, Dutchess County, extended the order of conditions until September 24, 2010.

In August 2010 the Commissioner moved to extend the order of conditions. As of July 29, 2010, the petitioner's psychiatric/clinical diagnosis was set forth, inter alia, as "Axis I" major depressive disorder severe recurrent with psychotic features; and "Axis II" personality disorder "NOS."

The proposed extended order of conditions contained the following disputed provision:

> "ORDERED that should the defendant fail to comply with any of the above conditions and refuse to appear for or comply with a psychiatric examination, the Commissioner shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility."

While the petitioner consented to the continuation of the order of conditions for an additional three years, he objected to the insertion of the disputed provision. In an amended order of conditions dated December 16, 2010, the respondent Christine A. Sproat, a Justice of the Supreme Court, Dutchess County, included the disputed provision. The petitioner is not presently confined and the disputed provision has not been invoked.

### The Instant Proceeding Pursuant to CPLR Article 78

The petitioner commenced the instant proceeding pursuant to CPLR article 78 in the nature of a writ of prohibition, to pro-

hibit the enforcement of the disputed provision. According to the petitioner, Justice Sproat exceeded her authority in issuing the amended order of conditions which contained the disputed provision. In support of this claim, the petitioner relied upon CPL 330.20 (14), which provides:

> "At any time during the period covered by an order of conditions an application may be made by the commissioner or the district attorney to the court that issued such order, or to a superior court in the county where the defendant is then residing, for a recommitment order when the applicant is of the view that the defendant has a dangerous mental disorder. The applicant must give written notice of the application to the defendant, counsel for the defendant, and the mental hygiene legal service, and if the applicant is the commissioner he must give such notice to the district attorney or if the applicant is the district attorney he must give such notice to the commissioner. Upon receipt of such application the court must order the defendant to appear before it for a hearing to determine if the defendant has a dangerous mental disorder. . . . If the defendant fails to appear in court as directed, the court may issue a warrant to an appropriate peace officer directing him to take the defendant into custody and bring him before the court. In such circumstance, the court may direct that the defendant be confined in an appropriate institution located near the place where the court sits. The court must conduct a hearing to determine whether the defendant has a dangerous mental disorder. At such hearing, the applicant, whether he be the commissioner or the district attorney must establish to the satisfaction of the court that the defendant has a dangerous mental disorder. . . . If the court finds that the defendant has a dangerous mental disorder, it must issue a recommitment order."

The petitioner asserted that CPL 330.20 (14) is the "mechanism by which to effectuate" the "temporary secure confinement" within the context of a pending recommitment application. Thus, he claimed that Justice Sproat improperly exceeded her authority when she authorized a secure confinement outside of what is presently permitted under law, bypassing safeguards and constitutional rights.

In a verified answer, dated June 3, 2011, the respondents entered denials to the allegations of the petition. The respondents asserted that no legal grounds existed for the instant CPLR article 78 proceeding. In this regard, the respondents stated that, contrary to the petitioner's contention, Justice Sproat did not "act either without jurisdiction or in excess of its authorized powers." Instead, the respondents maintained that the governing statute "explicitly" conferred "broad discretion" upon Justice Sproat to "fashion reasonable conditions to be included in an Order of Conditions." Specifically, the respondents contended that the disputed provision was permissible pursuant to CPL 330.20 (1) (*o*), which defines an order of conditions, in pertinent part, as "an order directing a defendant to comply with [a] prescribed treatment plan, *or any other condition which the court determines to be reasonably necessary or appropriate*, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization" (emphasis added).

The respondents also referred to CPL 330.20 (12), which states, in relevant part: "The order of conditions issued in conjunction with a release order shall incorporate a written service plan prepared by a psychiatrist familiar with the defendant's case history and approved by the court, and *shall contain any conditions that the court determines to be reasonably necessary or appropriate*" (emphasis added).

While the respondents acknowledged that the alternative to a temporary confinement provision is a "[r]ecommitment order" pursuant to CPL 330.20 (14), they asserted that the temporary order of confinement was a "less intrusive" means for the court to ensure compliance with the order of conditions.

In reply, the petitioner asserted that the disputed provision was not a "condition" relating to treatment, but rather pertained to the "consequences" that follow "if the treatment plan is not followed." He insisted that Justice Sproat was "not free to legislate."

## Legal Analysis

Initially, a petitioner seeking a writ of prohibition must demonstrate that a body or officer acting in a judicial or quasi-judicial capacity is proceeding or threatening to proceed in excess of its jurisdiction, and that the petitioner has a clear legal right to the relief requested (*see Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358, 361-362

[2008]). "[S]uch relief is 'extraordinary' and should only be granted in limited circumstances" (*id.* at 361; *see Matter of Nicholson v State Commn. on Jud. Conduct*, 50 NY2d 597, 605 [1980]). The petitioner herein has failed to make the required showing.

CPL 330.20, which was enacted in 1980, governs the procedure to be followed after a criminal court has entered a judgment that the defendant is not responsible by reason of mental disease or defect (*see Matter of Jamie R. v Consilvio*, 6 NY3d 138, 141 [2006]). If a person charged with a crime is found, by acceptance of a plea or by verdict, to be not responsible by reason of mental disease or defect, the court orders a psychiatric examination and conducts an initial hearing to determine whether the person is mentally ill or is suffering from a dangerous mental disorder (*see* CPL 330.20 [2], [3], [4]).

Based upon evidence at the initial hearing, the individual receives one of three classifications. Where the court finds that the individual has a dangerous mental disorder, he or she is classified in track one (*see* 1981 Rep of Law Rev Commn, 1981 McKinney's Session Laws of NY at 2265), and is committed to a secure facility for an initial term of six months (*see* CPL 330.20 [1] [f]; [6]). At the expiration of a six-month commitment order to a secure facility, the track one patient receives the first of a series of court reviews to determine his or her current mental condition. If the court finds that the individual continues to have a dangerous mental disorder, he or she must be recommitted under a first retention order for not more than one year (*see* CPL 330.20 [1] [g]; [8]), but second and subsequent reviews occur every two years (*see* CPL 330.20 [1] [h]; [9]). If a court finds that the individual no longer suffers from a dangerous mental disorder, it may direct transfer to a nonsecure facility with an order of conditions if the individual is still mentally ill, or release the individual with an order of conditions if the individual is no longer mentally ill (*see* CPL 330.20 [11], [12]).

Alternatively, where the court, in its initial determination, finds that the individual is mentally ill but does not have a dangerous mental disorder, he or she is classified in track two and committed to the custody of the Commissioner pursuant to the Mental Hygiene Law, with an order of conditions (*see* CPL 330.20 [7]), or where the court finds that the individual does not have a dangerous mental disorder and is not mentally ill, he or she is classified in track three and is discharged either "unconditionally or subject to an order of conditions" (*id.*; *see*

*Matter of Sheldon S.*, 9 AD3d 92, 96 [2004]; *Matter of David B.*, 97 NY2d 267, 276 [2002]). Accordingly, an order of conditions must be imposed on track one and two persons, and may be imposed on track three persons (*see Matter of Sheldon S.*, 9 AD3d at 96).

The petitioner at issue was classified in a *track one* status, since the court initially found that he was suffering from dangerous mental disorders. Further, his status as a track one patient does not change if he is later determined to be "mentally ill" but no longer suffering from the dangerous mental disorders (*see Matter of Norman D.*, 3 NY3d 150, 152 [2004]). "Track status, as determined by the initial commitment order, governs the acquittee's level of supervision in future proceedings and may be overturned only on appeal from that order, not by means of a rehearing and review" (*id.*).

As noted by the Court of Appeals in *Matter of Jill ZZ.* (83 NY2d 133, 138 [1994]), "the order of conditions is the vehicle" whereby the court "effectuates its continuing supervisory authority over" a person acquitted by reason of mental disease or defect. "Should a defendant fail to comply with the treatment plan specified in the order of conditions and thereafter become dangerous to himself or others, the courts may, upon a hearing, recommit the defendant to a secure psychiatric hospital" (*Matter of Oswald N.*, 87 NY2d 98, 102 [1995]). At any time during the period covered by an order of conditions, the Commissioner or the District Attorney may apply for recommitment, if the "applicant is of the view that the defendant has a dangerous mental disorder" (CPL 330.20 [14]). The purposes of the recommitment procedures are "to ensure that all persons who develop or relapse into a dangerous mental disorder during the pendency of the order of conditions are amenable to a secure psychiatric placement" (*People v Stone*, 73 NY2d 296, 303 [1989]; *see Matter of Sheldon S.*, 9 AD3d at 97).

The Court of Appeals has held that "[t]he retention, conditional release or discharge of a track one patient is governed entirely by CPL 330.20" (*Matter of Jamie R. v Consilvio*, 6 NY3d at 143). Since the petitioner is a track one patient, the terms relating to his supervision are governed solely by CPL 330.20. Thus, the crucial issue presented is whether the disputed provision is authorized by CPL 330.20.

There is *nothing* in the express language of CPL 330.20 that prohibits or limits the court's authority to entertain an application for a temporary confinement order such as the one at bar.

To the contrary, as persuasively maintained by the respondents, CPL 330.20 (1) (*o*) permits a court to direct "any other condition which the court determines to be reasonably necessary or appropriate." Further, the statute states that an order of conditions "shall contain any conditions that the court determines to be reasonably necessary or appropriate" (CPL 330.20 [12]). Inasmuch as each case is unique and not all conditions can properly be cookie cut or anticipated, the legislature saw fit to draft the statute in very broad terms so as to allow a court to properly devise "reasonably necessary or appropriate" conditions.

As succinctly stated by the Court of Appeals in *Matter of Oswald N.* (87 NY2d at 104),

> "[t]he postacquittal procedures now codified in CPL 330.20 and initially enacted into law as part of the Insanity Defense Reform Act of 1980 (L 1980, ch 548) were intended to protect the public from persons found not responsible of a crime by reason of mental disease or defect while providing effective treatment for such individuals."

Quoting from the Law Revision Commission which proposed the legislation largely incorporated in CPL 330.20, the Court of Appeals added that since

> " 'psychiatry cannot now guarantee the safety of the public from future dangerous acts of persons found not responsible . . . and will most likely be unable to do so in the foreseeable future, the procedures governing commitment, treatment, and release of such defendants are critically important. . . . [T]he mental condition of the defendant when released into the community—is the basis of public and professional concern' " (*id.*, quoting 1981 Rep of Law Rev Commn, 1981 McKinney's Session Laws of NY at 2261).

It is self-evident that the legislature set forth certain procedures for an application for a "recommitment order" (CPL 330.20 [14]). However, a "recommitment order" is not the exclusive tool available to the court under the statute. The temporary confinement order which includes the disputed provision constitutes an alternative means, separate from and short of a full recommitment order application process. The majority appears to conflate two entirely different concepts. CPL 330.20 (14) is the proper mechanism by which to proceed where "the

applicant is of the view that the [petitioner] has a dangerous mental disorder." That provision is different from the disputed provision. Within the construct of mental illness, the disputed provision provides a preventive and preemptive mechanism. One of the objectives of the disputed provision and the order of conditions itself is to provide a tool for monitoring a potential onset of symptomatology, anticipatory to a likely regression or decompensation. The disputed provision constitutes a safety net within the statutory framework. It is simply another means to avert an insanity acquitee's potential degeneration or devolution into a "dangerous mental disorder."

In order for the disputed provision to be invoked, two conditions must be met, namely, (1) the failure by the petitioner to comply with any of the conditions set forth in the amended order of conditions, i.e., treatment, *and* (2) the refusal by the petitioner to appear for or comply with a psychiatric examination. Upon a showing of noncompliance by the petitioner with those two conditions, the court may issue a "Temporary Confinement Order" for the *very* limited purpose of conducting an "effective psychiatric examination in a secure facility." Clearly, this temporary and substantially less intrusive measure sought for a very limited purpose, namely, to permit an application for conducting a psychiatric examination, cannot be said to be prohibited by the statute. The procedure that the provision facilitates constitutes an efficient means, consistent with the legislative intent and judicial authority, to balance the State's interest in protecting society with the petitioner's rights and civil liberties. The disputed provision is, in fact, consistent with the legislative intent and mandate upon the judiciary to supervise an insanity acquittee.

Under the well-established principles of judicial construction of statutes, courts should take statutes "as they find them and construe them according to the canons of interpretation, neither extending their operation beyond the bounds of the legislative intent, nor restricting their obvious application" (McKinney's Cons Laws of NY, Book 1, Statutes § 73, Comment). Neither the language nor the intention of CPL 330.20 supports the petitioner's arguments. Consequently, I will not circumscribe the Supreme Court's authority where, as here, the legislature has expressly permitted it to issue conditions which it determines to be "reasonably necessary or appropriate." The petitioner's contentions are counterintuitive, and the determination sought by the petitioner severely undermines the court's

authority to carry out its mandate in exercising continuing supervision over an insanity acquittee.

Further, I reject the petitioner's argument that the disputed provision violates his constitutional rights (*see Jones v United States*, 463 US 354, 370 [1983]). It cannot be said that the petitioner's liberty interests have been or will be violated by the disputed provision. The disputed provision is not a self-executing order. The petitioner is not forcibly subjected to a coercive psychiatric examination, to an invasive medical procedure, or to confinement without due process or equal protection. The disputed provision simply permits the Commissioner to apply to the court for a temporary confinement order for the purpose of conducting a psychiatric examination. The court, which is ultimately responsible for maintaining ongoing judicial supervision over an acquittee's treatment, must then determine whether it is appropriate to grant or deny the application.

Finally, I disagree with my colleagues' assertion that the disputed provision establishes an ex parte enforcement procedure for addressing violations of the order of conditions. The disputed provision provides the petitioner with ample notice and warning of what is expected of him, and of the consequences that may result should he fail to comply with the listed conditions and refuse to submit to a psychiatric examination.

Accordingly, I would deny the petition and dismiss the proceeding.

FLORIO and SGROI, JJ., concur with AUSTIN, J.; RIVERA, J.P., dissents in a separate opinion.

Adjudged that the petition is granted, on the law, without costs or disbursements, and the respondents are prohibited from enforcing or taking action to enforce the provision of the amended order of conditions dated December 16, 2010, which directed that should the petitioner fail to comply with any of the other conditions imposed in that order "and refuse to appear for or comply with a psychiatric examination," the Commissioner of the New York State Office of Mental Health "shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility."