OPINION OF THE COURT
Austin, J.
The petitioner was found not responsible for a crime by reason of mental disease or defect. As a result, on March 19, 1996, the County Court, Ulster County, remanded him to the custody of the respondent Commissioner of the New York State Office of Mental Health (hereinafter the Commissioner), pursuant to Criminal Procedure Law § 330.20, based upon a finding that he was dangerously mentally ill. By order of the Supreme Court, Dutchess County, dated August 1, 2002, the petitioner was released from confinement pursuant to a release order and order of conditions, which imposed a treatment plan effective for a period of five years. Thereafter, by order dated September 24, 2007, the order of conditions was extended until September 24, 2010.
In August 2010, the Commissioner moved to extend the order of conditions. The petitioner consented to the extension of the *178 order of conditions for an additional three years, but objected to the insertion of the condition in issue (hereinafter the disputed provision), which stated:
“ORDERED that should the [petitioner] fail to comply with any of the above conditions and refuse to appear for or comply with a psychiatric examination, the Commissioner shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility.”
In an amended order of conditions pursuant to CPL 330.20 dated December 16, 2010, the respondent Christine A. Sproat, a Justice of the Supreme Court, Dutchess County, included the disputed provision.
The petitioner commenced this proceeding against Justice Sproat, the Commissioner, and the District Attorney of Ulster County, pursuant to CPLR article 78, to prohibit the enforcement of the disputed provision in the amended order of conditions. The petitioner asserted that the Supreme Court went beyond its authority in including the disputed provision in the amended order of conditions. He claimed that a temporary confinement order, such as the one authorized in the disputed provision, could only be obtained pursuant to an application for a “[recommitment order” as governed by CPL 330.20 (14) since commitment orders are a creature of statute set forth in CPL 330.20. He maintained that the disputed provision authorized a secure confinement without regard for procedural safeguards and in contravention of his constitutional rights.
In their verified answer, the respondents contended that the Supreme Court was authorized by statute to “fashion reasonable conditions to be included in an Order of Conditions.” They claimed that the disputed provision was permissible pursuant to CPL 330.20 (1) (o), which defines an order of conditions, in pertinent part, as “an order directing a defendant to comply with [a] prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization.” The respondents also relied upon CPL 330.20 (12), which states, in pertinent part: “The order of conditions issued in conjunction with a release order shall incorporate a written service plan prepared by a psychiatrist familiar with the defendant’s case history and approved by the court, and shall contain any condi *179 tions that the court determines to be reasonably necessary or appropriate.”
The respondents did acknowledge that the alternative to a temporary confinement provision is a “recommitment order” as set forth in CPL 330.20 (14), but maintained that the temporary confinement was a “less intrusive” means by which the Supreme Court could make certain that a petitioner would abide by the order of conditions. Further, they asserted that there was no statutory authority prohibiting the Supreme Court from utilizing this measure.
In reply, the petitioner argued that the provision at issue was not related to treatment but was instead a consequence if he failed to follow the treatment plan. As such, he contended that the disputed provision should not have been included within the amended order of conditions.
We begin our analysis of whether the petitioner is entitled to a writ of prohibition with a consideration of the nature of the remedy sought and the statutory framework which governs individuals found not responsible for a crime by reason of mental disease or defect. Pursuant to subdivision (3) of CPLR 7803, a petitioner may question “whether a determination was made in violation of lawful procedure.” A writ of prohibition “is available only where there is a clear legal right, and then only when a court—in cases where judicial authority is challenged— acts or threatens to act either without jurisdiction or in excess of its authorized powers” (Matter of Holtzman v Goldman, 71 NY2d 564, 569 [1988]; see Matter of Hynes v George, 76 NY2d 500, 504 [1990]). Whether to grant prohibition, even where a justice or judge acts in excess of his or her legal powers, rests within the sound discretion of the reviewing court (see Matter of Holtzman v Goldman, 71 NY2d at 569). We find this case to be one of those extraordinary situations where prohibition is appropriate.
In a criminal case, when the verdict of not responsible by reason of mental disease or defect is entered against a person, or a person enters a plea of not responsible on that same ground and that plea is accepted, the court must immediately issue an order (hereinafter examination order) directing that person to submit to psychiatric examinations by qualified psychiatric examiners designated by the Commissioner to determine whether the person has a dangerous mental disorder or, if not, if the person is mentally ill {see CPL 330.20 [1] [e]; [2]). Thereafter, the reports of the psychiatric examiners are provided by the Commissioner to the court (see CPL 330.20 [5]).
*180 Within 10 days after receipt of those reports, the court will conduct an initial hearing to determine the person’s present mental condition (see CPL 330.20 [6]). Following that initial hearing, the person will be classified as either “track” one, two, or three (see Matter of Jamie R. v Consilvio, 6 NY3d 138, 142 [2006]). The track assigned to a person designates his or her level and nature of confinement or supervision (see id.). A person is found to have a dangerous mental disorder if he or she is mentally ill requiring inpatient care and treatment and is a physical danger to his or her self or others (see CPL 330.20 [1] [c]; Matter of Jamie R. v Consilvio, 6 NY3d at 145). The court will classify such a person as track one and commit him or her to a secure facility for an initial term of six months by issuing a “commitment order” (CPL 330.20 [6]; see Matter of Jamie R. v Consilvio, 6 NY3d at 142; Matter of Norman D., 3 NY3d 150, 156 [2004]).
A person classified as track one is “subject to far more comprehensive supervision by the courts than track two and three patients” (Matter of Jamie R. v Consilvio, 6 NY3d at 143; see Matter of George L., 85 NY2d 295, 301 [1995]). He or she will “remain confined in a secure facility subject to continued judicial supervision pursuant to CPL 330.20 until adjudicated no longer dangerous” (Matter of Jill ZZ., 83 NY2d 133, 137 [1994]). The petitioner in this case was classified as track one, since the court initially found that he was suffering from a dangerous mental disorder.
“Once track status is determined, future confinement of the individual is determined through periodic ‘retention’ hearings that may result in retention orders authorizing [the Office of Mental Health] to continue to hold the patient in a secure or nonsecure facility” (Matter of Jamie R. v Consilvio, 6 NY3d at 143). With respect to an individual in track one, pursuant to CPL 330.20 (8), the Commissioner must, at least 30 days prior to the expiration of the six-month commitment period, apply to the court for a “first retention order or a release order.” If the Commissioner submits an application for retention and a hearing is held, the Commissioner must establish that the individual has a dangerous mental disorder or is mentally ill (see CPL 330.20 [8]). If the application is for release, the burden is on the district attorney to establish that the individual has a dangerous mental disorder or mental illness (see id.). If the court determines that the person has a dangerous mental disorder, it must issue a “first retention order” (id.). A “[f]irst retention *181 order” authorizes continued custody of a person by the Commissioner for a period not to exceed one year (CPL 330.20 [1] [g]). If the court determines that the person is mentally ill but does not have a dangerous mental disorder, it must issue a first retention order, a “transfer order,” and an order of conditions (see CPL 330.20 [8]). If the court finds that the person is neither suffering from a dangerous mental disorder nor is mentally ill, it must issue a release order and an order of conditions (see id.).
Following retention pursuant to a first retention order, the Commissioner must again apply to the court at least 30 days prior to the expiration of the first retention order, for a second retention order or release order following the same procedure as was set forth with respect to an application for a first retention order (see CPL 330.20 [9]). This second review takes place 18 months after the original finding (see CPL 330.20 [1] [h]). A “[s]econd retention order” authorizes “continued custody of a [person] by the [C] ommissioner for a period not to exceed two years” (id.) The same procedure is employed for any application for subsequent retention orders (see CPL 330.20 [9]). Those reviews are conducted once every two years (see CPL 330.20 [1] [i]).
The Commissioner can apply for a transfer order when he or she deems that a track one individual, in the Commissioner’s custody pursuant to a retention or recommitment order, is no longer suffering from a dangerous mental disorder or that the person should be transferred from a secure facility to a nonsecure facility (see CPL 330.20 [11]). In the event that the court finds that a person designated as track one no longer suffers from a dangerous mental disorder, the court must grant the Commissioner’s application and issue a transfer order directing the transfer of the person to a nonsecure facility (see id.). “Whenever a court issues a transfer order it must also issue an order of conditions” (id.).
If the Commissioner applies for a release order because he or she believes that the person does not have a dangerous mental disorder or a mental illness, the court must promptly conduct a hearing to determine the person’s “present mental condition” (CPL 330.20 [12]). Should the court grant the application and issue a release order having found that the person does not have a dangerous mental disorder and is not mentally ill, it “must issue a new order of conditions” “incorporating] a written service plan prepared by a psychiatrist familiar with the *182 [person’s] case history and approved by the court, and . . . containing] any conditions that the court determines to be reasonably necessary or appropriate” (id.).
“[T]he order of conditions is the vehicle by which the convicting court effectuates its continuing supervisory authority over” a person acquitted by reason of mental disease or defect (Matter of Jill ZZ., 83 NY2d at 138). “These conditions may include required periodic visits to a specified outpatient facility, restrictions on a defendant’s alcohol consumption or place of residence, or, if the defendant has been transferred to a nonsecure facility, the requirement that defendant not leave the premises without written authorization” (Matter of Oswald N., 87 NY2d 98, 102 [1995] [citations omitted]). Failure to comply with the treatment plan specified in the order of conditions, followed by that person posing a danger to his or her self or others, may result in the court, “upon a hearing, recommitting] the defendant to a secure psychiatric hospital” (id. [emphasis added]).
During the pendency-of the order of conditions, the Commissioner or the district attorney may apply to the court for a recommitment of the defendant, if the “applicant is of the view that the defendant has a dangerous mental disorder” (CPL 330.20 [14]). “The applicant must give written notice of the application to the defendant, counsel for the defendant, and the mental hygiene legal service” (id.). Notice must also be given to the Commissioner or the district attorney depending on who makes the application (see id.). The defendant is then given notice, through personal service or by mail to his or her last known address, that the court is going to conduct a hearing to determine whether he or she has a dangerous mental disorder (see id.). The applicant has the burden at that hearing of proving that the defendant has a dangerous mental disorder (see id.). If the applicant meets that burden, the court must issue a recommitment order (see CPL 330.20 [14]). Based upon this statutory scheme, we find that requiring an application for the recommitment of an individual necessarily implicates the individual’s due process right to be heard before being recommitted; even if only temporarily.
The disputed provision at issue, as an “additional condition,” is not authorized by CPL 330.20 and improperly establishes an ex parte enforcement procedure for addressing violations of the amended order of conditions. Thus, this provision is violative of the due process protections afforded the petitioner under CPL article 330. The existing procedures mandated by the relevant *183 statutes and regulations are sufficient to protect the community and the petitioner. The creation of wholly new mechanisms of enforcement that mimic procedures prescribed by statute and regulation, but lack the same procedural safeguards, is unwarranted and troubling from a due process perspective.
As noted above, “[t]he retention, conditional release or discharge of a track one patient” such as the petitioner “is governed entirely by CPL 330.20” (Matter of Jamie R. v Consilvio, 6 NY3d at 143). Criminal Procedure Law § 330.20 contains no specific statutory procedure for dealing with an individual who has violated an order of conditions. However, CPL 330.20 (14) provides for the Commissioner or the district attorney to apply at any time during the period covered by an order of conditions for recommitment of the individual if the “applicant is of the view that the defendant has a dangerous mental disorder” (see Matter of Bowles [New York State Off. of Mental Retardation & Dev. Disabilities], 206 AD2d 216, 219 [1994]). Under 22 NYCRR 110.12 (b), the court is permitted to issue a “temporary confinement order” directing the confinement of an individual brought before the court on the warrant issued pursuant to CPL 330.20 (14). Therefore, if an individual violates an order of conditions and has a history of dangerous mental disorder, it is clear that the proper procedure is an application for recommitment (see e.g. Matter of Bowles, 206 AD2d at 219).
Moreover, upon application for a recommitment order, the subject of the application is entitled to notice and an opportunity to be heard (see Matter of Sheldon S., 9 AD3d 92, 98 [2004]; Matter of K.L., 302 AD2d 388, 391 [2003], affd 1 NY3d 362 [2004]). The disputed provision in this case did not provide for notice and an opportunity to be heard, thus depriving the petitioner of statutorily prescribed due process protections.
CPL 330.20 (1) (o) and (12) cannot be conflated so as to ignore the due process protections of CPL 330.20 (14). “All parts of a statute must be harmonized with each other” (McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [a]; see Sanders v Winship, 57 NY2d 391, 395-396 [1982]), and to construe one part of the statute so as to permit nullification of another is impermissible (see Matter of Albano v Kirby, 36 NY2d 526, 530 [1975]).
Since the disputed provision was not specifically authorized by CPL 330.20, and actually conflicts with the provisions of CPL 330.20 (14) by failing to provide for notice and an opportunity to be heard, it was improperly imposed. The Supreme Court does not have authority to issue a “Temporary Confine *184 ment Order” without notice until there is an application for recommitment—temporary or otherwise—on notice, in its current form. Therefore, enforcement of the disputed provision must be prohibited (see CPLR 7803 [2]; Matter of Oliver C. v Weissman, 203 AD2d 458, 459 [1994]).
Accordingly, the petition is granted, on the law, and the respondents are prohibited from enforcing or taking action to enforce the provision of the amended order of conditions dated December 16, 2010, which directed that should the petitioner fail to comply with any of the other provisions imposed in that order “and refuse to appear for or comply with a psychiatric examination,” the Commissioner of the New York State Office of Mental Health “shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility.”